```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


Liberty Mutual Fire Insurance Co., :
                                   :    CIVIL ACTION
          Plaintiff,               :    NO. 20-5093
                                   :
     v.                            :
                                   :
Harleysville Worcester Insurance   :
Co.,                               :
                                   :
          Defendant.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              March 10, 2021

**I.   INTRODUCTION**

This is an insurance coverage dispute. Liberty Mutual Fire Insurance Company ("LMFIC"), the Plaintiff here, seeks the following: 1) a declaratory judgment that Harleysville Worcester Insurance Company ("Harleysville") was and is required to defend and indemnify Domus, Inc. and Domus Construction, Inc. for an underlying lawsuit; 2) damages against Harleysville for attorneys' fees, plus costs and interest, incurred by LMFIC in connection with its defense of Domus in the underlying lawsuit; and 3) attorneys' fees and costs for the current lawsuit.

In response, Harleysville filed a Motion to Dismiss. For the reasons explained below, Harleysville's Motion to Dismiss LMFIC's Complaint will be denied, but LMFIC's declaratory

judgment claim as it pertains to Harleysville's duty to indemnify will be stayed, and therefore no judgment will be entered until the claim becomes ripe.

## II.  FACTUAL BACKGROUND[1]

On February 20, 2019, Joseph Forgrove commenced an action in the Philadelphia Court of Common Pleas against several defendants, seeking damages for injuries he allegedly sustained in a slip and fall accident on March 15, 2017, at a construction project near 845 N. 12th Street in Philadelphia (the "Premises"), where Domus, Inc. and its related entities (collectively, "Domus") were allegedly the construction managers, and Forgrove's employer, Direct Air LLC ("Direct Air"), was performing work.

In the underlying action, Forgrove asserts claims for negligence against Domus and others and alleges he was a Direct Air employee working in the course and scope of his employment at the Premises at the time of the accident. He also alleges Domus was negligent in failing to provide a safe workplace, in supervising the work site, in failing to require contractors and subcontractors to protect against the risk of injuries, and in failing to train and supervise employees. Furthermore, he alleges that defendants themselves, or through their employees,

---

[1]  The facts alleged by Plaintiff are accepted as true and viewed in the light most favorable to Plaintiff.

2

servants, and agents, had notice of the alleged unsafe and dangerous condition of the Premises.

Domus, as contractor, and Direct Air, as subcontractor, entered into a Subcontract on July 15, 2016, concerning construction work that Direct Air agreed to perform for the project known as HELP Philadelphia V located at the Premises. Section 4.1 of the Subcontract provides that the "Subcontractor shall supervise and direct the Subcontractor's work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work." Compl. ¶ 16, ECF No. 1. Section 4.3.1 of the Subcontract provides that the Subcontractor "shall take reasonable safety precautions with respect to performance of this Agreement [and] shall timely comply with safety measures initiated by Contractor." Id. ¶ 17 (alteration in original).

The Subcontract contains an indemnification provision that provides as follows:

> 2. INDEMNIFICATION
>
> a. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, Engineer, and agents and employees of any of them from and against any and all liability, claims, suits, causes of action, arbitrations, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work, failure to perform the Work or other act or omission under or in connection with this Agreement. This express indemnity shall not be construed to negate, abridge otherwise reduce other

>rights or obligations of indemnity that may otherwise exist.
>
>b.   In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of Subcontractor, the Subcontractor's Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor's Subcontractors under workers compensation acts, disability benefit acts or other employee benefit acts.

Id. ¶ 18.

The Subcontract also contains an insurance provision that required Direct Air to purchase and maintain a Commercial General Liability Insurance policy. In compliance with the Subcontract, Direct Air obtained such a policy from Harleysville (the "Harleysville Policy") with a policy period from August 2, 2016, to August 2, 2017. The Harleysville Policy contains an Additional Insured Endorsement ("AI endorsement") which provides, in part, as follows:

>**1. Section II - Who Is An Insured** is amended to include as an insured any person or organization for whom "you" are performing operations only as specified under a written contract (for purposes of this coverage referred to as the "written contract") that requires that such person or organization be added as an additional insured on "your" policy. Such person or organization is an additional insured only with respect to liability caused, in whole or in part, by the acts or omissions of the "Named Insured", or those acting on behalf of the "Named Insured", in the performance of the "Named Insured's" ongoing operations for the additional insured only as

4

>specified under the "written contract". A person's or organization's status as an insured under this coverage ends when "your" ongoing operations for that insured are completed.

Id. ¶ 22.

Pursuant to the terms of the AI endorsement, Domus, Inc. and Domus Construction, Inc. qualify as additional insureds under the Harleysville Policy for the claims alleged in the underlying action. The Harleysville Policy contains an "Other Insurance" provision which provides, in part, that "[i]f specifically required by the written contract referenced in Paragraph 1. above, any insurance provided by this coverage to an additional insured shall be primary and any other valid and collectible insurance available to the additional insured shall be non-contributory with this insurance." Id. ¶ 24.

LMFIC issued a Commercial General Liability Policy ("LMFIC Policy") to Domus, Inc. with a policy period of July 15, 2016, to July 15, 2017. The LMFIC Policy also contained an "Other Insurance" provision, but this one stated "[t]his insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." Id. ¶ 26.

In a letter dated February 19, 2018, LMFIC tendered Forgrove's claims against Domus to Direct Air. Harleysville

5

denied this tender. In a letter dated March 21, 2018, LMFIC tendered Forgrove's claims against Domus to Harleysville. Harleysville did not respond. In letters dated April 30 and August 12, 2020, LMFIC tendered the defense and indemnity of Domus in the underlying action to Harleysville. Harleysville denied the first tender and did not respond to the second one.

Based on the foregoing, LMFIC seeks a declaration of its rights with regard to the Harleysville Policy, including declaratory judgment that Harleysville was and is required to defend and indemnify Domus for the underlying action under the Harleysville Policy, and that such coverage applies on a primary and non-contributory basis before coverage under the LMFIC Policy applies to Domus. In addition to declaratory judgment, LMFIC seeks damages against Harleysville for attorneys' fees, plus costs and interest, incurred by LMFIC in connection with its defense of Domus in the underlying action. LMFIC also seeks attorneys' fees and costs for the current action.

**III. LEGAL STANDARD**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v.

6

Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon

these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

### A. Whether Domus Is an Indispensable Party

Harleysville first argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) because Domus is an indispensable party to this action. A Complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Rule 19. See Fed. R. Civ. P. 12(b)(7). Harleysville argues that Domus is indispensable under Rule 19(a)(1)(B) because excluding them from the case would impede their ability to protect their interest and would leave Harleysville subject to a substantial risk of incurring multiple or inconsistent obligations to Domus. See Fed. R. Civ. P. 19(a)(1)(B).

However, Rule 19(a)(1)(B) only requires an absent party to be joined if "that person claims an interest relating to the subject of the action." Id. (emphasis added). Accordingly, where the absent party does not indicate that it claims an interest in the action, Rule 19(a)(1)(B) is "rendered irrelevant." See, e.g., Coregis Ins. Co. v. Wheeler, 180 F.R.D. 280, 283 (E.D. Pa. 1998). Domus has not claimed an interest in this action. Thus,

8

Harleysville's motion to dismiss pursuant to Rule 12(b)(7) will be denied.

**B. Whether LMFIC Lacks Standing**

Harleysville next argues that the Complaint should be dismissed due to lack of standing, which the Court will construe as a motion to dismiss under Rule 12(b)(1). Harleysville argues that LMFIC is similar to Lancer, a case previously decided by this Court, in the sense that LMFIC "lacks prudential standing because it seeks a declaration about third parties' legal interests rather than its own." See Lancer Ins. Co. v. Harleysville Mut. Ins. Co., 108 F. Supp. 3d 275, 278 (Robreno, J.). Notably, however, Lancer had not requested remedies such as reimbursement or equitable contribution. See Transp. Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 641 F. Supp. 2d 406, 411-12 (E.D. Pa. 2008) (holding that an insurance company had standing to seek a declaratory judgment that it was entitled to a share of indemnification or equitable contribution from another insurance company), rev'd on other grounds, 346 F. App'x 862 (3d Cir. 2009).

Here, LMFIC seeks almost identical relief to the relief sought in Transp. Ins. Co., namely: 1) a declaration of the respective rights and obligations of the parties with respect to their liability insurance coverage obligations for Domus; 2) a monetary judgment against Harleysville for attorneys' fees,

9

costs, and interest incurred by LMFIC in connection with its defense of Domus in the underlying action (i.e., equitable contribution); and 3) attorneys' fees and costs in bringing this action. See id. at 408-09. Thus, this case is indistinguishable from Transp. Ins. Co. and distinguishable from Lancer, in that here, the plaintiff is seeking indemnification or equitable contribution. Consequently, Harleysville's motion to dismiss pursuant to Rule 12(b)(1) will be denied.

### C. Whether LMFIC States a Plausible Claim Under § 8371

42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021) provides that "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may . . . [a]ssess court costs and attorney fees against the insurer."

Harleysville first argues that LMFIC does not have standing to state a claim under § 8371 because they are not an "insured" under the Harleysville Policy and § 8371 only applies toward those who are insured under their Policy. This is simply incorrect. The Third Circuit has explicitly held that § 8371 applies not only to those who are insured under an insurance policy, but also to those who the insured has assigned their right of recovery to. See Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 491-92 (3d Cir. 2015).

Harleysville argues that Domus did not assign their right of recovery under § 8371 to LMFIC. However, the Court does not read Wolfe so narrowly as to require a technical "assignment." Rather, the holding would apply equally to technical assignments and contractual agreements that operate as effective assignments. Given that Domus is an insured under the Harleysville Policy and effectively assigned their right of recovery to LMFIC, LMFIC has standing to sue under § 8371. See Pl.'s Resp. to Def.'s Mot. Dismiss Ex. F, at 28, ECF No. 15-8 ("If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.").

Next, Harleysville argues that the Complaint is devoid of any factual averments to support a claim under § 8371. In order to show bad faith in the insurance context, a plaintiff must show a "frivolous or unfounded refusal to pay proceeds of a policy [evidencing] a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will." Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012) (quoting Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005)).

Here, the Complaint alleges that "Harleysville's failure to acknowledge its primary duty to defend . . . has no reasonable basis and, as such, Harleysville has breached its duty of good

11

faith and fair dealing." Compl. ¶ 45, ECF No. 1. The Complaint also specifically describes all of the instances in which Harleysville either denied or ignored LMFIC's tender letters. Id. ¶¶ 27-34. Accepting as true all of the allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and based on this record, LMFIC has sufficiently pled that based on the correspondence submitted to LMFIC, Harleysville did not adequately investigate, respond, or explain their refusal to defend and potentially indemnify Domus in the underlying action. Harleysville's motion to dismiss this claim is therefore denied.

### D. Whether Attorneys' Fees Apply to Declaratory Judgments

Harleysville argues that LMFIC's request for recovery of attorneys' fees in this action should be dismissed because the Declaratory Judgment Act does not provide the Court with statutory authority to award attorneys' fees to a prevailing party. However, 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2021) does provide the Court with statutory authority to award attorneys' fees, so Harleysville's motion will be denied for the same reasons explained above in Part C, supra (explaining that § 8371 explicitly allows the Court to award attorneys' fees for a bad faith action against an insurer and that an insured party can assign this right of recovery to a third party).

### E. Whether the Underlying Action Triggers a Duty to Defend

### 1. Direct Air Was Not Alleged to Be at Fault

Harleysville argues that the underlying action could not possibly trigger a duty to defend on their part because Direct Air was not alleged to be at fault in the underlying action.

The determinative case on this topic is Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660 (3d Cir. 2016). In Ramara, the issue was whether the defendant insurer had a duty to defend a putative additional insured. See id. at 665. In making the determination, the Third Circuit noted that the Pennsylvania Supreme Court has held that an insurer's potential duty is "determined solely by the allegations of the complaint in the [underlying] action." Id. at 673 (alteration in original) (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006)). It also reaffirmed that a court must view all allegations as true and "liberally construe [them] in favor of the insured." Id. (quoting Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).

In the underlying complaint at issue in Ramara, the plaintiff specifically alleged employment by a subcontractor, Fortress, at the time of the accident while in the course of his duties to install concrete and steel components at a parking garage project. See id. at 675. The underlying complaint alleged

13

that Ramara, the garage owner, "act[ed] by and through its agents, servants and/or employees" and "fail[ed] to adequately inspect and monitor the work performed." Id. (alterations in original). Ramara tendered its defense to Westfield, who insured Fortress. Id. at 665. The policy issued by Westfield to Fortress included an AI endorsement that defined an additional insured as:

> any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

Id. at 667.

The "caused, in whole or in part" language was interpreted by the Third Circuit to mean that "Westfield must defend Ramara under either the 'but-for' or 'proximate cause' interpretation of the Additional Insured Endorsement." Id. at 675. The court did not analyze the matter under the broader "but-for" test, which the court stated was the correct interpretation, because

14

the underlying complaint satisfied even the narrower "proximate causation" test, which the court defined as "a cause which was 'a substantial factor in bringing about the plaintiff's harm.'" Id. (quoting Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009)). Since Fortress, as a subcontractor, was alleged to be one of Ramara's "agents," "contractors," or "subcontractors," the underlying complaint "raise[d] at least the potential that Fortress's conduct was a proximate cause of [plaintiff's] injuries." Id.

Notably, in Ramara's case, Fortress was not a party to the underlying complaint. See id. at 677. The Third Circuit pointed out that the Workers' Compensation Act states that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees." 77 PA. Stat. and Cons. Stat. § 481 (West 2021). As direct employers are immune from tort claims for workplace injuries of their employees, the plaintiff's attorney in the underlying action in Ramara would not have drafted the complaint to include Fortress, regardless of whether the damages were caused by Fortress. Consequently, the Court held that:

> where the Workers' Compensation Act is relevant to a coverage determination, insurers (and the courts that review their determinations) must interpret the allegations of an underlying complaint recognizing that the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the Act into account. In this way, the Act operates as an

15

> interpretive constraint, making it more difficult for insurers to claim that the allegations of an underlying complaint fall patently outside the scope of coverage.

Ramara, 814 F.3d at 679-80.

This case is not distinguishable from Ramara in any substantive manner. Here, the plaintiff in the underlying action, Forgrove, was also an employee of the disclaiming insurer's insured, Direct Air. Direct Air could not be directly sued by Forgrove due to the Workers' Compensation Act. Direct Air was a subcontractor of Domus, much like Fortress was a subcontractor of Ramara. Here, like in Ramara, it was alleged that "[a]t all times relevant hereto, defendants acted through their agents, servants and employees, who were in the course and scope of their agency or employment." Pl.'s Resp. to Def.'s Mot. Dismiss Ex. C, ¶ 15, ECF No. 15-7.

The underlying complaint here alleges, inter alia, that Domus and others failed "to require contractors, subcontractors and other entities working at the project to protect against the risk of injuries," failed to "properly supervise the project," failed to "properly train and supervise its employees," and that defendants themselves "or through their employees, servants and agents . . . had actual notice of the unsafe and dangerous condition of the premises and sufficient time to correct the dangerous situation." Id. ¶¶ 28-29. Thus, the underlying

16

Complaint sufficiently alleges that Domus acted through its "agents, servants, and employees," which may include its subcontractors, such as Direct Air. The underlying Complaint also alleges, like in Ramara, that failing to monitor subcontractors was a cause of the plaintiff's injuries. As such, LMFIC has sufficiently pled that under the AI endorsement, Domus was an additional insured on the Harleysville Policy and Harleysville has a duty to defend Domus in the underlying action. Thus, Harleysville's motion to dismiss on this basis will be denied.

### 2. Indemnification Provisions Under the AI Endorsement

The AI endorsement states in relevant part that its coverage is limited to damages "which the additional insured is entitled to be indemnified by the 'Named Insured' pursuant to the 'written contract.'" Def.'s Mot. Dismiss 17, ECF No. 10.

Harleysville argues that the underlying action could not possibly trigger a duty to defend on their part because there is no basis on which Direct Air is obligated to indemnify Domus under their written contract. But this argument fails for the very reason they argue LMFIC's declaratory judgment claim should fail, namely, a lack of standing.

Harleysville is not a party to the contract between Direct Air and Domus, nor is Domus seeking to have that contract be enforced in the underlying action. As explained above in Part B,

17

supra, an outsider may not seek a determination of the legal obligations of third parties where it is not also seeking money damages.[2] Unlike LMFIC, Harleysville seeks no money damages in this matter, but is instead effectively asking this court to make a declaratory judgment concerning the hypothetical legal obligations that Direct Air would have against Domus. Given that they have no standing to do so, their motion to dismiss on this basis will be denied.

### F. Whether the Duty to Indemnify Is Premature

Lastly, Harleysville argues that the declaratory judgment claim related to their duty to indemnify Domus should be dismissed as not ripe because trial in the underlying action has not taken place. See Unionamerica Ins. Co. v. Johnson, 806 A.2d 431, 434 (Pa. Super. Ct. 2002) ("The duty to indemnify arises only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy."). LMFIC argues it would be in the interests of judicial economy for both claims to remain active. While this may be true, it does not change the fact that the claim is not yet ripe. Thus, LMFIC's declaratory judgment claim as it pertains to Harleysville's duty to indemnify will be stayed, and therefore no judgment will be entered until the claim becomes ripe.

---

[2] Harleysville's argument here is thus the exact opposite of the argument it advanced in Part B, supra, concerning why it believes LMFIC has no standing to pursue this action.

However, the parties have agreed to proceed with discovery on both the duty to indemnify and the duty to defend while the matter is otherwise stayed.

**V.    CONCLUSION**

For all of the aforementioned reasons, Harleysville's Motion to Dismiss LMFIC's Complaint will be denied, but LMFIC's declaratory judgment claim as it pertains to Harleysville's duty to indemnify will be stayed, and therefore no judgment will be entered until the claim becomes ripe.

An appropriate order follows.